SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**GEOFFREY A. BARROW, DC #462662**
Geoffrey.Barrow@usdoj.gov
**NICHOLAS D. MEYERS, OSB #222743**
Nicholas.Meyers@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:24-cr-00383-005-AN |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| ANITA VADUVA, | |
| Defendant. | |

Defendant Anita Vaduva was a prolific member of a large multi-state criminal conspiracy that stole more than $2.4 million dollars of benefits from hundreds of low-income and food-insecure individuals and families. Mothers struggling to feed their families and seniors who rely on public assistance were left in the checkout line, unable to purchase groceries because defendant and her coconspirators had depleted their electronic food benefits to purchase infant formula, energy drinks and other items, which the defendant, her son, and their coconspirators resold for personal gain.

**Government's Sentencing Memorandum**      **Page 1**

For all the reasons set forth herein, the government recommends a sentence of 21 months' imprisonment followed by a three-year period of supervised release and a $100 special assessment. The government also seeks restitution in the amount of $37,711.

I. **Factual Background**

A. **The Offense Conduct**

The Presentence Investigation Report (PSR) accurately summarizes the offense conduct in paragraphs 18 through 30, which are incorporated herein by reference.

The government's investigation began in 2023 in response to a dramatic rise in fraud associated with Electronic Benefit Transfer (EBT) cards in the Pacific Northwest. The investigation uncovered a coordinated effort to unlawfully obtain and use stolen EBT data to purchase infant formula and other goods at grocery stores in Oregon and Washington. Coconspirators transported the goods to California where they were sold on the illicit market.

The Supplemental Nutrition Assistance Program, known as SNAP, is a federal program that provides nutrition benefits to low-income individuals and families. SNAP is administered by the United States Department of Agriculture (USDA), under the Food and Nutrition Service. SNAP benefits are limited for use by eligible recipients at stores to purchase approved food items.

The State of Oregon administers the SNAP program using what is known as an Electronic Benefit Transfer (EBT) card. The EBT card is an access device within the meaning of 18 U.S.C. § 1029(e)(1), in that it is a card containing a series of numbers which can be used to obtain things of value, specifically, eligible food items under the SNAP program.

To administer Federal program benefits, the State of Oregon DHS uses an online magnetic card EBT system. Online systems use the existing card technology developed by

financial institutions and credit card companies. DHS provides a plastic EBT card, also referred to as the Oregon Trail Card, to SNAP recipients. The EBT card (the Oregon Trail Card) has a magnetic strip containing basic information necessary to make food purchases. At an authorized vendor, the recipient presents the card and enters a personal identification number (PIN) into a point-of-sale (POS) terminal. The POS terminal communicates with a central database that maintains recipient account balance information. The central database verifies the benefits available, authorizes the transaction, and deducts the purchase amount from the recipient's account. The system also calculates cumulative SNAP sales for each retailer and authorizes payment electronically to the retailer's bank account. The SNAP Program is funded by the USDA and administered through the State of Oregon DHS.

The amount of SNAP benefits received by a recipient or household is based on a means test, including an income and expense analysis. Benefits are typically issued monthly and are directly deposited to the SNAP recipient's EBT card account. Only the recipient or their authorized representative may use the recipient's benefits. All states maintain SNAP programs that operate in a substantially similar manner.

SNAP benefits are typically stolen by individuals and groups who surreptitiously affix skimming devices to EBT POS terminals. The skimming devices capture the EBT account number and PIN. The thieves encode the data on magnetic cards. They monitor the account balances on the SNAP accounts to strike shortly after benefits are transferred to the accounts. The thieves then use the encoded cards to purchase SNAP eligible benefits. Infant formula is frequently targeted because of its high value and ready market for illicit resale. As in this case, SNAP recipients often learn that their benefits have been stolen when they attempt to purchase groceries only to learn that their balances have been depleted without their knowledge.

Investigators in this case worked closely with retail loss prevention personnel in Oregon and Washington. Investigators gathered store surveillance footage showing the defendant and his coconspirators repeatedly making purchases of infant formula utilizing stolen SNAP benefits. Investigators also obtained purchase information, including the EBT card numbers, which document the transactions.

Beginning on or about April 4, 2024, and continuing through on or about October 22, 2024, defendant knowingly used stolen EBT account information and PINs from more than 10 individuals, to unlawfully obtain infant formula and other SNAP-eligible items at grocery stores in Oregon and Washington. Between April 4, 2024, and September 9, 2024, defendant unlawfully used stolen EBT benefits more than 125 times at Fred Meyer and Safeway locations in Oregon and Washington to obtain $36,711 in SNAP-eligible items. Defendant also worked closely with her co-defendant son, Ion Paul Miclescu. From April 4, 2024, to September 13, 2024, Miclescu used stolen EBT benefits to obtain SNAP-eligible items more than 510 times at Fred Meyer and Safeway locations in Oregon and Washington.

For example, on April 5, 2024, defendant entered a Fred Meyer in Portland, Oregon. She purchased $855.70 in goods using an EBT card ending in 4611. Those EBT benefits were issued to a victim in Oklahoma. The store's surveillance system captured the defendant and the transaction:



On May 8, 2024, defendant entered a Fred Meyer in Vancouver, Washington. She purchased $208.89 in goods using an EBT card ending in 2806. Those EBT benefits were issued to Victim J.B. in California. Defendant used additional EBT benefits belonging to other victims for a total transaction of $1,025:



**Government's Sentencing Memorandum**                                                                                   **Page 5**

On August 6, 2024, defendant, her son, and co-defendant Nicolas Barbosu, met with members of the transportation crew including co-defendants Edwin Santizo and Marta Hernandez at an apartment in Portland. They transferred fraudulently obtained infant formula to a van that coconspirators drove to a storage unit in Vancouver, Washinton. The following day, a commercial shipping company picked up two pallets described as "food" from the storage unit. The shipment weighed 2,600 pounds. Investigators estimate the value of the shipment at more than $50,000.

Defendant's coconspirators subsequently transported the items across state lines, where the goods were resold on the illicit market. In total, defendant and her son fraudulently obtained goods valued at no less than $178,204. Plea Agr. ¶ 6.

On October 22, 2024, law enforcement officers executed a search warrant at defendant's residence in Portland, Oregon. They seized two devices used to skim EBT benefits, 49 cards used to clone EBT cards, and miscellaneous identification documents. PSR ¶ 30

Investigators obtained commercial shipping records that document the shipment of 124,390 pounds of infant formula from the conspiracy's Vancouver, Washington, storage unit to San Pedro, California. PSR ¶ 18. A conservative estimate of the value of these goods is more than $2.4 million. *Id.*

**B. The Charges**

On October 9, 2024, defendant and fifteen coconspirators were charged in a sixteen-count indictment. Defendant was charged in Count 1 with Conspiracy to Defraud the United States, in violation of Title 18, United States Code, Section 371. She was also charged in Count 7 with Unauthorized Use of Access Devices, in violation of Title 18 United States Code, Section 1029(a)(2).

II.  **Plea Agreement and Guidelines Computations**

On October 15, 2025, defendant pleaded guilty to Count 1 of the Indictment.

The sentencing guidelines are accurately set forth in paragraphs 35 through 46 of the presentence report as follows:

| Guideline Section | Offense Level |
|---|---|
| Base Offense Level – USSG § 2B1.1(a)(1) | 6 |
| Loss of $>$150,000 – USSG § 2B1.1(b)(1)(F) | 10 |
| Ten or More Victims – USSG § 2B1.1(b)(2)(A) | +2 |
| Unauthorized Access Devices – USSG § 2B1.1(b)(11) | +2 |
| **Total** | 20 |
| Acceptance of Responsibility – USSG § 3E1.1 | -3 |
| **Final Offense Level** | 17 |

At the time of the plea agreement, the parties made no agreement regarding defendant's criminal history. Plea Agr. ¶ 8. Paragraph 10 of the plea agreement provides "[i]f defendant does not have any criminal history points and otherwise meets all of the criteria for the "Adjustment for Certain Zero-Point Offenders," the parties will recommend a two-level downward adjustment pursuant to USSG § 4C1.1. Subsequent to the preparation of the PSR, the parties learned that defendant had a 2024 conviction for Theft II in Chalis, Washington, resulting in one criminal history point. Accordingly, defendant is not eligible for a reduction pursuant to USSG § 4C1.1.

Defendant's 2024 conviction is consistent with her arrest history which includes an outstanding warrant for Grand Theft III from Tampa, Florida, an outstanding warrant for Theft III in Kirkland, Washington, and a pending charge for Organized Retail Theft and Aggravated Theft in Hillsboro, Washington. PSR §§ 52-54. All of these arrests appear to be for retail theft. *Id.*

**Government's Sentencing Memorandum**     **Page 7**

### III. Argument

#### A. Government's Recommended Sentence

Pursuant to the plea agreement and applicable advisory sentencing guidelines, the government recommends a sentence of 21 months followed by a three-year period of supervised release. A 21-month sentence of imprisonment is warranted based on defendant's involvement using stolen EBT data to purchase SNAP-eligible goods to be resold on the illicit market for personal gain. She is unlawfully present in the United States and will face deportation. If deported, her conditions of release require her to remain outside the United States.

#### B. Restitution and Forfeiture

Pursuant to 18 U.S.C. § 3663A, the government seeks an order of restitution in the amount of $36,711. As set forth above, defendant was personally responsible for using $36,711 in stolen EBT benefits during the course of the conspiracy. Payment should be made to Food and Nutrition Service at the address set forth in Paragraph 80 of the PSR.

There are no outstanding forfeiture issues.

### IV. Conclusion

For the above reasons, the government respectfully recommends the Court impose a sentence of 21 months followed by a three-year period of supervised release and a $100 fee assessment.

Dated: February 25, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

s/ *Geoffrey A. Barrow*
GEOFFREY A. BARROW, DCB #462662
Assistant United States Attorney